**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KIM CARL,

                                          Plaintiff,

            - v -                                              Civ. No. 9:09-CV-724
                                                                        (GTS/RFT)

ARTHUR DIRIE, *Deputy Security Superintendent,*
*Greene Correctional Facility*; PETER D. BEHRIC,[1]
*Superintendent, Greene Correctional Facility*; TRUDELL,
*Sergeant, Greene Correctional Facility*,

                                          Defendants.

**APPEARANCES:**                                     **OF COUNSEL:**

KIM CARL
Plaintiff, *Pro se*
02-A-4431
Mt. McGregor Correctional Facility
1000 Mt. McGregor Road
Box 2071
Wilton, NY 12831

HON. ANDREW M. CUOMO                          JAMES SEAMAN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

    *Pro se* Plaintiff Kim Carl filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging

violations of his constitutional rights. Specifically, Plaintiff brings claims of retaliation, due process,

---

    [1] Based on the documents attached to Plaintiff's Complaint, it is clear that the correct spelling of Defendant
Berhic's name is "Behrle." *See, e.g.*, Dkt. No. 1, Compl., Ex. A, Sup't Resp. to Pl.'s Grievance, dated Apr. 29, 2009.
We will use the correct spelling of this Defendant's name.

and cruel and unusual punishment.  *See generally* Dkt. No. 1, Compl.  Presently before the Court is Defendants' Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6).  Dkt. No. 14, Defs.' Mot. to Dismiss.  Plaintiff opposes the Motion.  Dkt. No. 15, Pl.'s Resp. in Opp'n to Defs.' Mot. (hereinafter "Pl.'s Resp.").  For the reasons that follow, we recommend that Defendants' Motion be **granted** in part and **denied** in part.

## I.  BACKGROUND

The following facts are derived from Plaintiff's Complaint, which, in accordance with the applicable standard on a motion to dismiss, must be accepted as true for the purposes of deciding Defendants' Motion.  *See infra* Part II.A.  In addition, "while courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion."  *See Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) (internal citation and quotation marks omitted).  We therefore take judicial notice of the documents attached to the Complaint, which include copies of Plaintiff's Grievance, Misbehavior Report, and administrative appeals, all of which are specifically referred to in the Complaint.  *See id.* ("The records of state administrative proceedings may be considered.").

On April 4, 2009, Plaintiff's family came to visit him at Greene Correctional Facility ("Greene") and brought him a food package.  Compl. at ¶ 1.[2]  After the visit, Plaintiff picked up the food package in the package room.  *Id.*  Upon returning to his housing unit, Plaintiff noticed that the package did not contain any cheese or fully-cooked meats, both of which items his family

---

[2] Plaintiff's factual allegations are laid out in four lengthy paragraphs, the first of which begins on page 2 of the Complaint under the "Facts" section of the 42 U.S.C. § 1983 complaint form.  *See* Compl.

customarily brought him.  *Id.*  Plaintiff called his family, who informed him that the package room officer did not accept those items and had returned them to his family.  *Id.*

Later that week, Plaintiff went to the prison law library in order to get a copy of a Memorandum concerning food packages that was authored by Defendant Deputy Superintendent of Security Arthur Dirie.  *Id.*  The law library clerk gave Plaintiff a free copy of the Memorandum, which stated that packages containing food labeled "keep refrigerated" were not permitted, but items with the label "refrigerate after opening" were allowed.  *Id.*  Dirie's Memorandum changed the food package policy at Greene, which had allowed "keep refrigerated" food items since 1990.  *Id.*  Moreover, DOCS Directive #4911 states that inmates are allowed to receive precooked meats, fish, and sliced and block cheese, all of which bear the "keep refrigerated" label.  *Id.*

Plaintiff alleges that Defendant Dirie issued the Memorandum in retaliation for other inmates' efforts to expose a Greene correctional officer who stole their incoming food packages.  *Id.*  The Central Office Correctional Service and the Inspector General are conducting investigations into that retaliation claim.  *Id.*

Plaintiff wrote Assistant Commissioner Diane VanBuren[3] a letter concerning the change in policy and included Dirie's Memorandum.  *Id.*  On April 14, 2009, an officer approached Plaintiff in the messhall and told him to go to Defendant Sergeant (Sgt.) Trudell's office.  Sgt. Trudell told Plaintiff that Dirie assigned him to investigate the letter Plaintiff had sent to Commissioner VanBuren.  *Id.*  Plaintiff explained to Trudell how he received a free copy of Dirie's Memorandum, and Trudell told Plaintiff that Dirie "was very mad because [Plaintiff] snitch[ed] on him" to the Commissioner.  *Id.*  Plaintiff protested to Defendant Trudell that he had done nothing wrong, stating

---

[3] VanBuren is not a named Defendant in this action.

that all he did was challenge Dirie's change in a long-established policy that had allowed inmates to receive food packages labeled "keep refrigerated." *Id.* Trudell told Plaintiff he had breached prison security. *Id.* On April 14, 2009, Dirie ordered Trudell to send Plaintiff to the Special Housing Unit ("SHU"). *Id.* The next day, Plaintiff received a Misbehavior Report charging him with Property Damage or Loss (Rule 116.10) and Counterfeiting or Forgery (Rule 116.12). *Id.*

The Misbehavior Report states that Trudell was

> conducting an investigation into inmate Carl, Kim . . . mailing a Facility Memorandum to Assistant Commissioner D. VanBuren in Albany, Building 2. Inmate Carl mailed a letter to Assistant Commissioner D. VanBuren with a Facility Memorandum written by Deputy Superintendent of Security A. Dirie dated February 10, 2009. The memorandum is regarding Directive 4911, Package Room refrigerated items. During the course of my interview inmate Carl freely admitted to receiving a copy of the memorandum from an unidentified inmate in the Law Library without paying the $.10 per copy cost for photocopying the memorandum and mailing the memorandum to D. VanBuren, Assistant Commissioner, without permission. This is supported by inmate Carl's own admission.

Dkt. No. 15, Pl.'s Resp., Attach., Misbehavior Rep., dated Apr. 14, 2009.

Plaintiff alleges the Misbehavior Report contained false charges and was filed in retaliation for his letter to Commissioner VanBuren. Compl. at ¶ 3. Plaintiff also alleges that while in SHU, he was harassed by Dirie, who also had him moved to another cell. *Id.*

On April 21, 2009, Housing Commissioner Eric Gutwein[4] presided over a Tier III Disciplinary Hearing on the charges brought in the April 14th Misbehavior Report. *Id.* Plaintiff alleges Gutwein was partial and had prejudged his guilt despite a lack of evidence to support the convictions. *Id.* Plaintiff was sentenced to 120 days in SHU, loss of all privileges, and loss of good time credits. *Id.*, Ex. A, Sup't Hr'g Disposition Sheet, dated Apr. 21, 2009. Plaintiff received a copy of the written statement setting forth the bases for his conviction. *Id.*

---

[4] Gutwein is not a party to this action.

Plaintiff filed a Grievance, dated April 27, 2009, alleging that Dirie had retaliated against him because of the letter he sent to the Commissioner, and requesting that the convictions rendered at the Tier III Hearing be overturned.  *Id.*, Ex. A, Grievance, dated Apr. 27, 2009.  On April 29, 2009, Superintendent Behrle responded to Plaintiff's Grievance, advising Plaintiff that "you cannot grieve a misbehavior report" and suggesting that Plaintiff file a direct appeal of the Tier III disposition.  *Id.*, Ex. A, Sup't Resp. to Pl.'s Grievance, dated Apr. 29, 2009.  On or about April 28, 2009, Plaintiff filed an administrative appeal of the Hearing disposition.  *Id.*, Ex. A, Pl.'s Admin. Appeal, dated Apr. 28, 2009.

At some point during Plaintiff's SHU confinement, Superintendent Behrle told him that in writing the Memorandum, Defendant Dirie had relied on a decision of the Central Office Review Committee ("CORC"), CX-10998-05, a copy of which Behrle provided to Plaintiff.  *Id.* at ¶ 4 & Ex. A, CORC Decision, dated June 22, 2005.  That CORC decision clarified that

> smoked meat, poultry, or seafood is considered cooked, and is allowed.  CORC asserts that vacuum sealed meats that are fully cooked, that do not require refrigeration should be permitted through the package room.  Food items requiring refrigeration prior to opening are not allowed.  However, items which indicate "refrigerate after opening" would be allowed.

*Id.*

Plaintiff also filed a complaint directly with Karen Bellamy, Director of the Inmate Grievance Program, on or about May 5, 2009.  *Id.* at p. 6.  In a letter, dated May 12, 2009, Bellamy advised Plaintiff that DOCS's policy does not allow inmates to file grievances directly with the Central Office, and directed him to submit a grievance directly with the Inmate Grievance Review Committee ("IGRC") at Greene.  *Id.*, Ex. A, Lt., dated May 12, 2009.

On May 14, 2009, Plaintiff was transferred from Greene to another prison facility and, on that same date, Special Housing Director Norman Bezio reversed his Tier III convictions.  *Id.*, Ex.

B, Review of Sup't Hr'g, dated May 14, 2009.  Thus, Plaintiff served thirty (30) days of his 120-day SHU sentence.

## II.  DISCUSSION

### A.  Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice."  *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950-51.

## B.  Retaliation Claim

Plaintiff asserts Defendant Deputy Superintendent Arthur Dirie ordered Defendant Sgt. Trudell to issue him a false Misbehavior Report in retaliation for the letter Plaintiff sent to Assistant Commissioner VanBuren concerning Dirie's change in the policy regarding food packages at

Greene.  *See generally* Compl.  Plaintiff also alleges that Defendant Superintendent Behrle learned of this retaliation through Plaintiff's Grievance and disciplinary appeal, but did nothing to correct the situation.  *Id.*

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove that (1) he engaged in constitutionally protected conduct; (2) prison officials took an adverse action against him; and (3) a causal connection exists between the protected speech and the adverse action.  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

As retaliation claims may be easily fabricated by inmates, courts have scrutinized such claims with extra care.  *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 467-68 (S.D.N.Y. 1998).  In *Flaherty v. Coughlin*, the Second Circuit described three different methods of pleading retaliation, each requiring separate analysis by the court.  713 F.2d at 13.  First, a retaliation claim supported by "specific and detailed allegations" must be pursued with full discovery.  *Id.* (cited in *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997)).  Whereas, a claim asserting retaliation in "wholly conclusory terms may safely be dismissed on the pleadings alone."  *Id.* ("In such a case,

the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants."). The third situation involves a complaint alleging facts that give rise to a "colorable suspicion of retaliation." *Id.* This third type of case will support at least documentary discovery. *Id.*

In this case, Plaintiff alleges that he was retaliated against for filing a letter of complaint with Assistant Commissioner VanBuren. The Supreme Court has noted that the right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). The Second Circuit has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access . . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'" *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976)) (emphasis and alterations in original). Thus, Plaintiff has stated that he was engaged in constitutionally protected conduct. *See Rosales v. Fischer*, 2009 WL 928260, at *10-11 (S.D.N.Y. Mar. 31, 2009) (holding that the filing of a letter of complaint was protected conduct even though it was not a formal grievance).

As to the second prong, Plaintiff alleges that Defendants retaliated against him by filing a false Misbehavior Report against him, which lead to his disciplinary convictions and confinement in SHU for thirty (30) days, after which period his convictions were reversed and he was released from SHU. Finally, Plaintiff has alleged a plausible causal connection between his protected conduct the alleged retaliatory acts. Plaintiff alleges that on April 14, 2009, shortly after he wrote his letter to VanBuren, Defendant Trudell informed Plaintiff that Defendant Dirie assigned him to investigate Plaintiff's letter to VanBuren, and that Trudell told Plaintiff that Dirie "was very mad

because [Plaintiff] snitch[ed] on him." Compl. at ¶ 2. Plaintiff alleges he was sent to SHU on that same day, and received the Misbehavior Report the next day. *Id.* Approximately one month later, after having spent a month in SHU, Plaintiff's convictions were overturned. *Id.*, Ex. B, Review of Sup't Hr'g, dated May 14, 2009.

Defendants do not challenge the facial validity of Plaintiff's retaliation claim, but rather, appear to assert that because Plaintiff's disciplinary convictions were based on his allegedly improper possession of a copy of Dirie's Memorandum, Defendants would have taken the same actions absent any retaliatory motives. Dkt. No. 14, Defs.' Mem. of Law at p. 10. The Misbehavior Report accused Plaintiff of receiving a copy of Dirie's Memorandum without paying for it, and of sending a copy of the Memorandum to VanBuren without permission. Misbehavior Rep., dated Apr. 14, 2009. The Misbehavior Report charged Plaintiff with Property Damage/Loss (Rule 116.10) and Counterfeiting/Forgery (116.12). *Id.*

Plaintiff maintains that inmates can properly obtain copies of DOCS directives through the law library, and that one of the clerks at the law library gave him a copy of the Memorandum free of charge because that particular copy was in bad shape. Pl.'s Resp. at p. 2. Plaintiff further asserts that such exchange occurred in plain view of Officer Kimberly Johnson,[5] who did not intercede. *Id.* Plaintiff denies that he participated in any counterfeiting and/or forgery. *Id.* Finally, Plaintiff notes that his convictions were overturned and alleged that while in SHU, Dirie harassed him by moving his cell and stating "who put you in the box[?]" Compl. at ¶ 3.

We cannot say that, as a matter of law, Plaintiff has failed to state a retaliation claim upon which relief could be granted. Notwithstanding Defendants' argument that the same actions would

---

[5] Officer Kimberly Johnson is not a named Defendant in this action.

have been taken absent the existence of any retaliatory animus, that is a factual issue unresolvable in the context of Defendants' current Motion to Dismiss.

Because Plaintiff has stated a plausible claim of retaliation against Defendants Dirie and Trudell, it is recommended that Defendants' Motion to Dismiss Plaintiff's retaliation claims be **denied**.

### C.  Due Process Claims

Plaintiff alleges that his due process rights were violated during the course of his Tier III Disciplinary Hearing.  Specifically, Plaintiff alleges that Housing Commissioner Eric Gutwein, a non-party to this action, conducted a partial disciplinary hearing, convicted Plaintiff based on little or no evidence, and pre-judged his guilt.  *See* Compl.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Thus, because Gutwein is not a Defendant and there are no due process claims alleged against any named Defendant, such claims should be properly dismissed for failure to allege personal involvement.

However, even if we were to consider the adequacy of Plaintiff's due process claims, they would still fail because Plaintiff has failed to identify a protected liberty interest.  In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest.  *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  The Supreme Court held in *Sandin v. Conner* that state created liberty interests shall be limited to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents

*-11-*

of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, Plaintiff alleges that he spent thirty (30) days in SHU with loss of privileges, but alleges no additional aggravating circumstances present during that period of confinement. Courts in this Circuit have held that a thirty (30) day period in SHU, absent additional egregious circumstances, is not "atypical and significant" so as to create a liberty interest and thereby trigger the protections of the Due Process Clause. *See Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999) (101 days in normal SHU conditions was not atypical or significant) (cited in *Ochoa v. DeSimone*, 2008 WL 4517806, at *4 (N.D.N.Y. Sept. 30, 2008) (30 days in SHU, without more, did not create a liberty interest)); *Thompson v. LaClair*, 2008 WL 191212, at *3 (N.D.N.Y. Jan. 22, 2008) (30 days in SHU does not create a liberty interest). Therefore, we find that Plaintiff has failed to allege he suffered from an atypical and significant hardship and it is recommended that his due process claims be **dismissed** on that ground as well.

## D. Eighth Amendment Claim

Plaintiff appears to bring a cause of action under the Eighth Amendment, although it is unclear whether such claim is premised upon Dirie's alleged harassment during his stint in SHU, the allegedly false Misbehavior Report, the conditions of his confinement while in SHU, or all three. *See* Compl. at ¶ 3. Therefore, we will briefly address all three possible claims.

It is well settled law in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Petway v. City of New York*, 2005 WL 2137805, at *3 (E.D.N.Y. Sept. 2, 2005); *Larocco v. N.Y. City Dep't of Corr.*, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001). Thus, "verbal harassment or profanity alone, unaccompanied by

an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Moncrieffe v. Witbeck*, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (quoting *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y. 1998)). Additionally, "threats do not amount to violations of constitutional rights." *Id.* (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)). As such, Plaintiff's allegations of harassment, even if true, do not state a valid cause of action under § 1983.

As per the allegedly false Misbehavior Report, as Defendants note, such an action does not constitute a violation of the Eighth Amendment's ban on cruel and unusual punishment. *See Guilbert v. Sennett*, 2009 WL 2381303, at *10 (W.D.N.Y. Aug. 3, 2009); *see also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) for the proposition that there is "no general constitutional right to be free from being falsely accused in a misbehavior report.").[6]

Finally, with respect to Plaintiff's conditions in SHU, it is settled law in this Circuit that "[t]he conditions of special housing units do not per se constitute cruel and unusual punishment in violation of the Eighth Amendment." *Dixon v. Goord*, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002) (citing *Anderson v. Coughlin*, 757 F.2d 33, 34-35 (2d Cir. 1985)); *see also Smith v. Fischer*, 2009 WL 632890, at *11 (N.D.N.Y. Feb. 2, 2009). Because Plaintiff does not allege that he was subjected to anything beyond the normal SHU conditions, his Eighth Amendment claim must fail.

For all the above reasons, it is recommended that Plaintiff's Eighth Amendment claims be **dismissed.**

---

[6] However, a false misbehavior report may be part of a valid retaliation claim brought under the First Amendment. *See supra* Part II.B.

*-13-*

**E.  Supervisory Liability**

As previously mentioned, the Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d at 501 (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at \*2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937, 1948 (2009).

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

In this case, Plaintiff alleges he filed a Grievance with Defendant Superintendent Behrle that put Behrle on notice of the other Defendants' improper actions.  Plaintiff also states that Behrle approached him while he was in SHU and gave him a copy of the CORC decision upon which Dirie's Memorandum was based.  Compl. at ¶ 3 & Ex. A, Grievance, dated Apr. 27, 2009.  In his response to Plaintiff's Grievance, Behrle advised Plaintiff that an inmate "cannot grieve a

misbehavior report," and suggested that Plaintiff file an appeal.  *Id.*, Ex. A, Resp. to Pl.'s Grievance, dated Apr. 29, 2009.  However, Behrle's response also stated that Plaintiff's "allegations of staff misconduct will be investigated."  *Id.*  It is unclear from the pleadings if an investigation ever took place and, if so, whether Behrle was involved.  *Id.* at ¶ 3.

Defendants assert that Behrle should be dismissed for lack of personal involvement because his only alleged involvement was responding to Plaintiff's Grievance.  Defs.' Mem. of Law at pp. 11-12 (citing cases for the proposition that the mere denial of a grievance is insufficient to establish personal involvement).  However, "there may be situations in which a supervisory official's receipt and review of a letter of complaint will, in combination with other factors, give rise to the official's personal involvement in the matters complained of."  *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009).  Namely, "if the official does personally look into the matters raised in the letter, or otherwise acts on the prisoner's complaint or request, the official may be found to be personally involved."  *Id.* (citing *Charles v. New York State Dep't of Corr. Servs.*, 2009 WL 980548, at *6 (N.D.N.Y. Mar. 31, 2009)).

Accepting all of Plaintiff's allegations as true and in a light most favorable to him, he has alleged sufficient facts to implicate Behrle's personal involvement in the alleged retaliatory actions taken against him.  Plaintiff alleges that his Grievance, and possibly Behrle's own investigations, put Behrle on notice of the other Defendants' alleged retaliatory acts and that Behrle failed to take remedial actions to correct the situation.  We find these alleged facts sufficient to state a facially valid constitutional claim against Defendant Behrle.  Therefore, we recommend that Defendants' Motion be **denied** on this ground.

### III.  CONCLUSION

*-15-*

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 14) be **GRANTED in part** and **DENIED in part** in accordance with the above opinion; and it is further

**RECOMMENDED**, that should the District Court adopt our recommendations, the following claims will remain: (1) First Amendment retaliation against Defendants Dirie and Trudell; and (2) supervisory liability against Defendant Behrle.  Plaintiff's due process and Eighth Amendment claims are recommended for dismissal; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   March 29, 2010
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-16-*

*-17-*